# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

## 2014-1556

_____

HELFERICH PATENT LICENSING, LLC and WIRELESS SCIENCE, LLC,
*Appellants*,

v.

CBS INTERACTIVE, INC., THE NEW YORK TIMES COMPANY,
G4 MEDIA, LLC, and BRAVO MEDIA LLC,
*Appellees*,

and

MICHELLE K. LEE, Deputy Under Secretary of Commerce
for Intellectual Property and Deputy Director of the
U.S. Patent and Trademark Office,
*Intervenor*.

_____

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in No. 2013-00033
_____

## BRIEF OF APPELLEES CBS INTERACTIVE, INC., THE NEW YORK TIMES COMPANY, G4 MEDIA, LLC, and BRAVO MEDIA LLC

_____

ANDREA G. REISTER
GREGORY S. DISCHER
MICHAEL S. SAWYER
COVINGTON & BURLING LLP
1201 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004
(202) 662-6000

November 17, 2014                    *Counsel for Appellees*

## CERTIFICATE OF INTEREST

Counsel for Appellees CBS Interactive, Inc., The New York Times Company, G4 Media, LLC, and Bravo Media LLC, certifies the following:

1.      The full name of every party or *amicus* represented by me is:

CBS Interactive, Inc., The New York Times Company, G4 Media, LLC, and Bravo Media LLC.

2.      The name of the real party in interest represented by me is:

Not applicable.

3.      All parent corporations and any publicly held companies that own 10% or more of the stock of the party or amicus curiae represented by me are:

CBS Corporation owns 10% or more of the stock of CBS Interactive, Inc.

Bravo Media LLC is a subsidiary of NBCUniversal Media, LLC, which is wholly and indirectly owned by Comcast Corporation.  No other publicly held company owns more than 10% of the stock of G4 Media, LLC.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

**Covington & Burling LLP**, Andrea G. Reister, Gregory S. Discher, Michael S. Sawyer, Michael M. Markman.

**Gibson Dunn & Crutcher LLP**, Brian M. Buroker.

i

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTEREST ............................................................... i

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ................................................................. v

STATEMENT OF RELATED CASES .................................................... x

COUNTERSTATEMENT OF THE ISSUES .......................................... 1

PRELIMINARY STATEMENT ............................................................. 2

COUNTERSTATEMENT OF THE CASE ............................................. 3

I.      The '241 Patent And Prior Art Describe The Use Of Message
        Notifications And User-Controlled Message Retrieval ................................ 3

        A.      The '241 Patent: Selective Message Retrieval In Pagers .................... 3

        B.      The Smith Patent: Selective Message Retrieval In An Integrated
                Telephone Message Center ...................................................... 8

II.     Procedural Background ......................................................... 12

        A.      Petition For *Inter Partes* Review ....................................... 12

        B.      Patent Owner Preliminary Response ................................... 13

        C.      Institution Of *Inter Partes* Review ................................... 13

        D.      Motion To Amend ...................................................... 14

        E.      Patent Owner Response ................................................ 15

        F.      HPL's Supplemental Information ...................................... 16

        G.      Final Written Decision ............................................... 17

SUMMARY OF ARGUMENT ......................................................... 20

ARGUMENT ........................................................................... 25

I.    Standards Of Review ................................................................... 25

II.   The Board's Claim Construction Should Be Affirmed ................................ 27

      A.    The Board's Constructions Of "Information Identifier
            Identifying The Information" And "Message Identifier
            Identifying The Message" Should be Affirmed ............................... 28

      B.    HPL Waived Any Argument That The Board Improperly
            Construed "Address Of The Information Stored In The Storage
            Unit" ...................................................................... 32

III.  The Board Correctly Concluded That Smith Invalidates The '241
      Patent ........................................................................ 33

      A.    The Board's Finding That Smith Discloses An "Information
            Identifier Identifying The Information" And A "Message
            Identifier Identifying The Message" Is Correct And Supported
            By Substantial Evidence ................................................... 33

      B.    The Board's Finding That Smith Taught An Identifier
            "Specifying An Address Of The Information Stored In The
            Storage Unit" Is Correct And Supported By Substantial
            Evidence .................................................................. 39

      C.    The Board's Finding That Smith Taught An Identifier Including
            A "Code" Is Correct And Supported By Substantial Evidence ......... 40

IV.   The Board Properly Denied HPL's Motion To Amend ................................ 42

      A.    HPL Failed To Establish Written Description Support For Its
            Substitute Claims.......................................................... 43

      B.    The Board Properly Required HPL To Make A Prima Facie
            Showing Of Patentability .................................................. 47

      C.    The Board Correctly Concluded That HPL's Substitute Claims
            Would Be Obvious Over Smith .............................................. 55

V.    The Board's Finding That Smith Is Prior Art Should Be Affirmed............. 56

      A.    The Board Did Not Abuse Its Discretion By Excluding HPL's
            Late Evidence ............................................................. 56

B.     The Board's Conclusion That HPL Failed To Establish
       Conception Before The Critical Date Is Supported By
       Substantial Evidence .......................................................................... 57

CONCLUSION ................................................................................................... 59

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs v. Cordis Corp.*,
    710 F.3d 1318 (Fed. Cir. 2013) ........................................................55

*Abbott Point of Care Inc. v. Epocal, Inc.*,
    666 F.3d 1299 (Fed. Cir. 2012) ........................................................26

*Adams Fruit Co. v. Barrett*,
    494 U.S. 638 (1990)........................................................................26

*Adv. Magnetic Closures, Inc. v. Rome Fastener Corp.*,
    607 F.3d 817 (Fed. Cir. 2010) ........................................................44

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..................................43, 44

*Auer v. Robbins*,
    519 U.S. 452 (1997)........................................................................26

*Bender v. Dudas*,
    490 F.3d 1361 (Fed. Cir. 2007) ........................................................54

*Block v. U.S. Int'l Trade Comm'n*,
    777 F.2d 1568 (Fed. Cir. 1985) ........................................................35

*Broadcom Corp. v. Qualcomm Inc.*,
    543 F.3d 683 (Fed. Cir. 2008) ........................................................21

*Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)........................................................................26

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197 (1938)........................................................................25

*Cooper Techs. Co. v. Dudas*,
    536 F.3d 1330 (Fed. Cir. 2008) ........................................................26

*Custom Computer Servs. v. Paychex Props.*,
    337 F.3d 1334 (Fed. Cir. 2003) ........................................................45

*Director, Office of Workers' Compensation Programs v. Greenwich
Collieries,*
512 U.S. 267 (1994) ......................................................................51

*FirstHealth of the Carolinas, Inc. v. CareFirst of Md., Inc.,*
479 F.3d 825 (Fed. Cir. 2007) ....................................................45

*In re Gleave,*
560 F.3d 1331 (Fed. Cir. 2009) ..................................................25

*Idle Free Sys., Inc. v. Bergstrom, Inc.,*
No. IPR2012-00027, 2013 Pat. App LEXIS 6302
(P.T.A.B. June 11, 2013). ...................................................48, 49, 53

*Idle Free Sys., Inc. v. Bergstrom, Inc.,*
No. IPR2012-00027, 2014 Pat. App. LEXIS 1400
(P.T.A.B. Jan. 7, 2014) ...............................................................51

*Int'l Flavors & Fragrances, Inc. v. United States,*
No. IPR2013-00124, 2014 Pat. App LEXIS 3073
(P.T.A.B. May 20, 2014). ............................................................48

*In re Jolley,*
308 F.3d 1317 (Fed. Cir. 2002) ..................................................26

*Kirkendall v. Dep't of the Army,*
573 F.3d 1318 (Fed. Cir. 2009) ..................................................26

*KSR Int'l Co. v. Teleflex Inc.,*
550 U.S. 398 (2007)....................................................................41

*Lazare Kaplan Int'l, Inc. v. Photoscribe Techs.,*
628 F.3d 1359 (Fed. Cir. 2010) .............................................21, 32

*Linares Huarcaya v. Mukasey,*
550 F.3d 224 (2d Cir. 2008) (per curiam) ..................................45

*Lockwood v. Am. Airlines, Inc.,*
107 F.3d 1565 (Fed. Cir. 1997) ..................................................46

*In re Mettke,*
570 F.3d 1356 (Fed. Cir. 2009) ..................................................25

*In re Morris*,
  127 F.3d 1048 (Fed. Cir. 1997) ...................................................25, 27

*In re NTP, Inc.*,
  654 F.3d 1279 (Fed. Cir. 2011) ..........................................................58

*Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*,
  73 F.3d 1085 (Fed. Cir. 1995) .............................................................25

*In re Paulsen*,
  30 F.3d 1475 (Fed. Cir. 1994) .............................................................27

*Schaffer v. Weast*,
  546 U.S. 49 (2005)........................................................................52, 53

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
  749 F.3d 1373 (Fed. Cir. 2014) ...........................................................45

*In re Sullivan*,
  362 F.3d 1324 (Fed. Cir. 2004) ...........................................................27

*Superguide Corp. v. DirecTV Enterprises, Inc.*,
  358 F.3d 870 (Fed. Cir. 2004) .............................................................32

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) .......................................................52, 53

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  No. 13-845 (U.S. filed Jan. 26, 2014)..................................................25

*In re Van Geuns*,
  988 F.2d 1181 (Fed. Cir. 1993) ...........................................................27

*Zenon Envtl., Inc. v. U.S. Filter Corp.*,
  506 F.3d 1370 (Fed. Cir. 2007) .......................................................46, 47

**Statutes**

5 U.S.C. § 706...............................................................................24, 57

5 U.S.C. § 706(2)(A).............................................................................27

5 U.S.C. § 706(2)(E).............................................................................25

35 U.S.C. § 6(b)(4)................................................................................45

35 U.S.C. § 112......................................................................................46

35 U.S.C. § 120......................................................................................45

35 U.S.C. § 316(a)(9)............................................................................54

35 U.S.C. § 316(a)(11)..........................................................................14

35 U.S.C. § 316(b).................................................................................54

35 U.S.C. § 316(c).................................................................................45

35 U.S.C. § 316(d)...................................................................23, 48, 54

35 U.S.C. § 316(e)...........................................................23, 51, 52, 54

35 U.S.C. § 319......................................................................................45

**Other Authorities**

37 C.F.R. § 42.6.....................................................................................50

37 C.F.R. § 42.20(c)........................................................................*passim*

37 C.F.R. § 42.22(a)(2).........................................................................53

37 C.F.R. § 42.22(d) ............................................................................49

37 C.F.R. § 42.24(a)(v) ........................................................................50

37 C.F.R. § 42.100(b) ..........................................................................27

37 C.F.R. § 42.121 ...............................................................................48

37 C.F.R. § 42.121(a)(2)(i) ...........................................................49, 50

37 C.F.R. § 42.121(b) .................................................................42, 43, 50

37 C.F.R. § 42.121(b)(1).............................................................23, 43, 44

37 C.F.R. § 42.121(b)(2)................................................................23, 46

37 C.F.R. §42.123(b) .................................................................3, 24, 57

Black's Law Dictionary (9th ed. 2009) ....................................................................50

H.R. Rep. No. 112-98, pt. 1 (2011)..........................................................................2

Changes to Implement Inter Partes Review Proceedings, Post-Grant
    Review Proceedings, and Transitional Program for Covered
    Business Method Patents,
    77 Fed. Reg. 48,680 (Aug. 14, 2012) .........................................................50, 55

Office Patent Trial Practice Guide,
    77 Fed. Reg. 48,756 (Aug. 14, 2012) .........................................................47, 48

Rules of Practice for Trials Before the Patent Trial and Appeal Board
    and Judicial Review of Patent Trial and Appeal Board Decisions,
    77 Fed. Reg. 48,612 (Aug. 14, 2012) ..............................................48, 49, 52, 54

## STATEMENT OF RELATED CASES

No other appeal from this *inter partes* review before the United States Patent and Trademark Office was previously before this or any other appellate court. The patent at issue in this appeal, U.S. Patent No. 7,155,241 ("the '241 patent"), is also the subject of two consolidated appeals pending in this Court, *Helferich Patent Licensing, LLC v. CBS Corporation*, No. 2014-1198, and *Helferich Patent Licensing, LLC v. Bravo Media, LLC*, No. 2014-1199. Those cases may be directly affected by this Court's decision in the pending appeal.

## COUNTERSTATEMENT OF THE ISSUES

1.      Whether the Board reasonably construed "[information/message] identifier identifying the [information/message]" as "data that identify the remotely stored [information/message], facilitating the process of locating and retrieving the remotely stored [information/message]" under the broadest reasonable interpretation standard.

2.      Whether HPL waived its right to challenge the construction of the term "address of the information stored in the storage unit" by not raising this claim construction issue until after the Board's final decision; if not, whether the Board applied an unreasonable construction of this limitation.

3.      Whether the Board's factual findings about what the Smith reference discloses to a person skilled in the art, which relied on credibility determinations involving competing expert testimony, were supported by substantial evidence.

4.      Whether the Board erred in denying HPL's motion to amend its patent claims on the ground that the motion was both procedurally and substantively defective.

5.      Whether the Board abused its discretion in denying HPL's request to introduce evidence nearly a month after the deadline for doing so had passed.

6.      Whether the Board's factual finding that HPL had failed to show conception prior to Smith's critical date is supported by substantial evidence.

## PRELIMINARY STATEMENT

The America Invents Act created a new, streamlined *inter partes* review

procedure that allows interested parties to challenge patents that do not comply

with the Patent Act's novelty and nonobviousness requirements.  That procedure

was designed to reform a patent system in which "questionable patents [we]re too

easily obtained."  H.R. Rep. No. 112-98, pt. 1, at 39 (2011).  This appeal concerns

one such patent.

Appellees, content providers that deliver news and entertainment to millions

of Americans via wireless networks, petitioned for review of 41 claims in a patent

controlled by appellants (collectively "HPL").  The Patent Trial and Appeal Board

(the "Board") granted the petition and, in a thorough, 62-page decision, invalidated

all 41 challenged claims as obvious in light of prior art.  The Board based its ruling

on credibility assessments and two key findings: (i) that the prior art (the "Smith"

patent) disclosed a nearly identical approach for accessing remotely stored

information and messages, and (ii) that the supposedly distinctive feature of HPL's

patent—the use of a message identifier—would have been obvious to one with

ordinary skill in the art.  HPL's appeal makes no real effort to contest those

findings.  Instead, the appeal focuses on collateral issues.  HPL contests the

Board's eminently reasonable construction of the phrase "message identifier for

identifying the message" as "data that identify the remotely stored message,

facilitating the process of locating and retrieving the remotely stored message."

And HPL ventures even further afield in insisting that the Board should have

accepted its untimely submission of supplemental information, even though HPL

had the information in its possession long before the relevant deadline, and even

though Patent Office regulations permit untimely submissions only when the

information "reasonably could not have been obtained earlier."  37 C.F.R.

§ 42.123(b).  The proceedings below unfolded exactly as Congress intended when

it enacted the America Invents Act, and there is no reason for this Court to disturb

the Board's ruling.

## COUNTERSTATEMENT OF THE CASE

I.    **The '241 Patent And Prior Art Describe The Use Of Message Notifications And User-Controlled Message Retrieval**

A.    **The '241 Patent: Selective Message Retrieval In Pagers**

The '241 patent describes communication methods with paging devices

(*e.g.*, paging receivers or transceivers).  A200.[1]

When the patent was filed, paging receivers were capable of receiving

messages (such as alphanumeric messages or voice messages) over the airwaves.

A215 (1:27–46).  These messages would be stored on the paging receivers, which

the patent describes as "rather small electronic device[s]" with "a limited amount

---

[1] Citations to "A___" refer to the Joint Appendix. Citations to "Br. at __" refer to HPL's brief.

of memory for storing messages that have been received from a base station." *Id.* (1:47–49).  The patent explained that a "need therefore exists for a paging receiver which can display and/or play messages while efficiently using memory." *Id.* (1:63–65).

Helferich claimed to solve this problem by inventing a selective paging system that "notifies a paging transceiver that a message has been received but does not initially transmit the associated message." A216 (3:8–10).  Instead, the system sends a notification with information about the message. *See id.* (3:6–23).  After receiving such a notification, a user can "download the entire message at a time convenient to the user." *Id.* (3:11–12).  Because entire "messages are not initially transmitted," the paging receiver can store a greater number of pages. *Id.* (3:16–18).

This selective paging system "may transmit identifying information about the page to the user without sending the entire message." *Id.* (3:24–26).  That "identifying information" allows the user to "determine the priority of the message" because it "may identify the type of message, such as email, voice, or text, and also indicate the caller or other descriptive material about the message." *Id.* (3:24–29).  When the system identifies the message type and source, the user can then decide whether "to retrieve the message, play the message, erase the message, store the message, forward, reply, or otherwise act on the message." *Id.*

(3:30–32). "The information initially sent to the user *may also indicate* the location of the stored message." *Id.* (3:38–39) (emphasis added).

The '241 patent describes "preferred embodiments of the invention . . . only for the purpose of illustration and description and is not intended to be exhaustive or to limit the invention to the precise forms disclosed," A224 (19:48–51), and references "non-limiting examples" illustrated in the drawings, A216 (4:41–43).

One preferred embodiment describes a set of remote systems 30A, 30B and 30C that store messages for future retrieval by a paging transceiver 100, as shown in Figure 10:



FIG. 10

5

A213, A222–23 (16:57–17:45).  For example, "system 30A may store voice mail messages and email messages directed to the user's office, system 30B may store voice mail messages directed to the user's home, and system 30C may store audio messages."  A223 (17:29–32).  When a message is received at system 30C, a data transmission 201 is sent to system 30A, so that system 30A can arrange to have a page sent from base station 34A to paging transceiver 100.  *Id.* (17:43–47).  Figure 11 shows an example of some fields that *may* be included in data transmission 201:



| SYSTEM ID | TRANSCEIVER(S) ID | MESSAGE ID | MESSAGE TYPE | MESSAGE LENGTH | MESSAGE PRIORITY | ADDITIONAL INFORMATION |
|---|---|---|---|---|---|---|
| | | | | | | |

## FIG. 11

A214, A223 (18:10–13).  Some, but not necessarily all, of these fields in data transmission 201 will be included in the page or "selective call signal"[2] that is sent from base station 34A to transceiver 100.[3]

---

[2] "A page call is processed by transmitting selective call signals . . . ."  A218 (8:66–67).

[3] "[W]hen a voice mail message or email message is received at system 30A, the system 30A delivers a page to base station 34A which is then delivered to paging (continued…)

Once the user receives a page, the user can decide which action to perform

with the message.  Figure 8 shows a set of functions (such as message retrieval in

step 114) that the user may select:



**FIG. 8**

A211, A219 (10:29–54).  The user selects "[o]ne or more of these functions . . .

through the user interface" of paging transceiver 100.  A216 (4:42-47), A219

(10:34-35).  For example, "[i]f the user selects the retrieve message function, then

the paging transceiver 100 can contact" the remote storage system through a base

station "to retrieve the desired message."  A223 (18:36–39).

---

transceiver 100."  A223 (17:36–39).  "The page sent to the paging transceiver 100
includes most, if not all, of the data transmission 201."  *Id.* (18:28–29).

"When the retrieve message function is selected at 114, . . . the message identifiers corresponding to messages to be returned" are used to retrieve the message.  A220–21 (12:66–13:2).  "[T]he message may be identified in a number of ways, such as with a message code or by specifying the location in memory where the message is stored."  A223 (18:60–63).

## B.    The Smith Patent: Selective Message Retrieval In An Integrated Telephone Message Center

Prior art U.S. Patent No. 6,333,973 to Smith relates to the field of telephone message handling.  A1241 (1:19–20).  Smith explains that telephone users could traditionally receive only voice messages, and even those were retrieved through a "slow and tedious process" that "required the user to dial the voice mail service and listen to each message."  *Id.* (1:25–32).  Smith recognized, however, that more recent "telephones have been designed with the capability to directly receive, or download, different types of messages, such as faxes, e-mail, and Short Messaging Service (SMS) messages."  *Id.*  (1:41–44).

Smith identified two problems with these newer telephones.  First, they stored most received messages in internal memory, thereby "wast[ing] precious memory space" and permitting "fewer messages [to] be locally stored."  *Id.* (2:7-12).  Second, message handling on these phones was still "cumbersome because the telephones are menu driven and contain separate applications for the different message types."  *Id.* (2:13–15).  Thus, Smith recognized that "a need exists to

8

integrate different types of messages from different types of equipment into one graphical location to notify the user of pending messages and their type, and to allow the user to view and respond to the messages by simple operation." *Id.* (2:19–23).

Smith disclosed a way to "address this need by providing an integrated message center that graphically displays different types of received messages together to facilitate user viewing and manipulation of the messages." *Id.* (2:27–30). That "integrated message center" operates on "telecommunications equipment, having a display and a processor," which "receives notification messages corresponding to pending messages of different types." *Id.* (2:35–39).

Smith's integrated message center compiles these notification messages to present the user with a "single selectable list" of messages that displays "a portion of the received notification messages and the associated message type indicators." *Id.* (2:41–46). "The user can select one of the pending messages" on that list, and "[i]n response to [that] selection, the integrated message center retrieves the selected pending message for viewing and manipulation by the user." *Id.* (2:46–50).

Smith teaches that the notification messages would contain substantial information to identify the received message. For example, the "voice mail notification message might include the caller's name and telephone number, a time

9

and date stamp, and the name and address of [the] voice mail server." A1244

(7:54–56). Portions of these notification messages are compiled into a "scrollable,

selectable list 7300," where "[e]ach entry" on the list "identifies a received

message and includes the sender's name 7400 and an identification icon 7500," as

seen in Figure 7A:



**FIG. 7A**

A1231, A1244 (8:36–45).

"If the user desires," Smith's integrated message center "will provide more

detailed information about any of the received messages." A1244 (8:52–53). To

view the detailed information, the user simply selects a message from the

scrollable list. *Id.* (8:54–56). The message center will then display more detailed

information (*e.g.*, "the sender's home, office, and/or cellular telephone number, a

10

location icon indicating from where the sender sent the message, the sender's e-mail address, the date and time the message was received, etc.") that it obtained from the notification messages. *Id.* (8:56–65).

The message center also enables users to easily perform actions on these remotely stored messages. For example, the user could select an entry from the list that identifies a fax message, and the message center will display "a graphical depiction of the SMS fax notification message." A1245 (10:3–8). "At this point, however," the fax mail server "continues to store the actual contents of the fax." *Id.* (10:8–10). "When the user wants to retrieve the fax after viewing the fax notification message, the user first selects the fax icon corresponding to the fax from the message center display [FIG. 7A], and then instructs" the mobile telephone "to retrieve the fax by pressing the 'View' button" seen in Figure 11:



**FIG. 11**

*See* A1235, A1245 (10:17–21). The mobile telephone will then download the fax from the fax mail server. A1245 (10:21–24). In addition to viewing the fax, the message center also permits the user to "select and view the contents or a portion of the contents of the fax, forward the fax to facsimile equipment, a printer, or a computer, delete the fax, and change the password to [the] fax mail server." *Id.* (10:11–14).

## II.    Procedural Background

### A.    Petition For *Inter Partes* Review

On September 25, 2012, appellees submitted a petition for *inter partes* review of the '241 patent. A303-65. That petition asserted that 41 claims were

unpatentable as obvious over Smith in combination with one or two other references. Within the sixty-page limit set by regulation, the petition contained detailed claim charts comparing the challenged claims to the prior art.

### B.    Patent Owner Preliminary Response

On January 18, 2013, HPL filed a preliminary response to the petition. A385-413. Although HPL had an opportunity to do so, that preliminary response did not address the claim construction of either (1) the terms "information identifier identifying the information" and "message identifier identifying the message," or (2) the term the "address of the information stored in the storage unit."

### C.    Institution Of *Inter Partes* Review

On March 25, 2013, the Board issued a decision instituting the *inter partes* review of the '241 patent based on its determination that there was a "reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." A5–30. In that decision, the Board identified the meaning of the term "an information identifier identifying the information" as relevant to patentability. A16. Based on its review of the '241 patent, the Board initially construed the term to mean "descriptive material about the information," including information that identified the sender, the message type or the address of the information. A16–17.

13

Once the *inter partes* review was instituted, the Board was required to issue

a final determination within one year, absent good cause for an extension.  35

U.S.C. § 316(a)(11).  Accordingly, the same day it instituted the *inter partes*

review, the Board set deadlines in preparation for an October 21, 2013 hearing.

A414–20.  That schedule required HPL to file its response to the petition and any

motion to amend the patent by May 28, 2013.  A419.  On May 14, 2013, two

weeks before HPL's response was due, the parties agreed to extend HPL's deadline

to June 7, 2013.  A464–68.

### D.    Motion To Amend

On June 7, 2013, HPL filed a conditional motion to amend its claims.[4]

A562–78.  That motion sought to amend 16 claims of the '241 patent in the event

that any claim of the '241 patent was cancelled.  HPL's principal amendment

amended the claim limitation "an information identifier identifying the

information" to "a message ID identifying the message by specifying the address

in the storage unit for the message."  A564.  In that motion, HPL attempted to

distinguish the proposed amended claims from the prior art cited in the petition.

But HPL failed to show that the proposed amended claims would be patentable

over the prior art in general, or at least indicate that the cited prior art is the closest

---

[4] The Board's electronic filing system actually recorded the date as June 8, 2013, which would be untimely, but the Board gave HPL the benefit of an earlier filing date.  A41–42.

prior art known to HPL with respect to the proposed amended claims. HPL also made no effort to show written description support in each original disclosure necessary to support its claim of priority.

Appellees opposed HPL's motion to amend on several grounds. A779–800. First, HPL failed to "come forward" with reasoning about why its amended claims were patentable in general, not just over the prior art in the petition. A785–86. Second, HPL failed to demonstrate written description support for the amended claims in *each original disclosure* to which it claimed priority. A786-87. Appellees also identified why there was no written description support in the *issued patent* for the amended claims, and explained why the amended claims were obvious over both prior art in the petition and new prior art. A787-799.

HPL filed a reply brief in support of its motion to amend on September 9, 2013. A842–849. In that brief, HPL finally provided the original disclosure of the '241 patent and one of the earlier-filed disclosures. However, HPL did not provide all of the earlier-filed disclosures upon which HPL relies for its claim of priority.

### E.     Patent Owner Response

On June 7, 2013, HPL filed its patent owner response to the petition. A469–561. That response exceeded the allowed length by twenty pages because HPL included an unauthorized statement of material facts. *See* A480-504. The Board

authorized HPL to file a corrected response (A40–41), which was filed on June 25, 2013. A607–77.

HPL's corrected response attempted to antedate Smith. A629-632. Smith was filed on April 23, 1997, nearly five months before the earliest priority date available to the '241 patent. HPL nonetheless asserted that it conceived of the claims in the '241 patent prior to April 23, 1997, relying on a self-serving declaration from named inventor Richard Helferich. A5751–85. HPL attempted to corroborate that date using an undated handwritten specification. *See* A5838–99.

HPL's corrected response also addressed the construction of the terms "information identifier identifying the information" and "message identifier identifying the message." HPL asserted that these terms should be construed to mean "a label, symbol, or token that establishes the identity of the [information/message] that is stored in the system, such as a code or the [information's/message's] address in the system." A649. But HPL's response did not raise the issue of how the term "address of the information stored in the storage unit" should be construed. *See* A607–77.

## F.    HPL's Supplemental Information

On July 5, 2013—more than a month after the initial deadline for the patent owner response—HPL sought authorization to submit supplemental information regarding conception. A45–47. Appellees opposed this request on the grounds

that (1) the delay was inexcusable because HPL had had notice that Smith had been used to reject the claims of the '241 patent for more than a year and (2) this late supplementation would prejudice the appellees, given their impending briefing deadlines. A46. The Board denied HPL's request based on its determination that the appellees' arguments had merit. *Id*.

Between July 9, 2013 and July 23, 2013, HPL proceeded to file three requests for rehearing of the Board's decision denying it authorization to file this supplemental corroboration information. A704–53. To its first rehearing request, HPL attached the very supplemental information that the Board had declined to allow. A48-50. The Board therefore expunged HPL's first rehearing request because it amounted to a "motion to submit supplemental information in violation of the Board's Order," and reminded HPL that it had fourteen days from the decision to request rehearing. A49. HPL failed to file a procedurally compliant request for rehearing within that time period. A51–54.

## G.    Final Written Decision

After an oral hearing, the Board issued its final written decision on March 3, 2014. A91–153. That decision canceled every challenged claim and denied HPL's motion to amend.

The Board rejected HPL's proposed construction of an "identifier" as "a label, symbol, or token that establishes the identity" of information or a message.

A103–04.  Instead, the Board construed the claim term "information identifier for identifying the information" to mean "data that identify the remotely stored information, facilitating the process of locating and retrieving the remotely stored information."  A99.  The Board also construed the claim term "message identifier for identifying the message" as "data that identify the remotely stored message, facilitating the process of locating and retrieving the remotely stored message."  *Id.*

Applying this claim construction, the Board had little difficulty finding that Smith disclosed "information identifiers" and "message identifiers."  The Board found that "Smith's integrated message center (*see, e.g.*, Figures 7A and 7B) provides a graphical user interface display on the user's mobile telephone, permitting the user to view the notification message and request a download of the particular remotely stored message from the server to the mobile telephone." A126.  Because that "server uses the information provided by the mobile device to identify and locate the particular message among large quantities of messages," the Board found that "the data items in the notification message also serve the function of identifying the remotely stored message, facilitating the process of locating and retrieving the particular remotely stored message from the server."  *Id.*

The Board also rejected HPL's efforts to antedate Smith because HPL lacked sufficient evidence corroborating conception prior to Smith's filing date. A134–140.

18

The Board denied HPL's motion to amend for at least three reasons.  First, HPL failed to show written description support in the original disclosures of each earlier-filed application to which it claimed priority.  A143–44.  HPL's motion instead identified support only in the issued patent and the issued grandparent patent, but it did not identify any support in the parent patent.  Nor did its motion to amend identify any support in the original disclosures of any of those patents.

Second, the Board held that HPL had not set forth a "prima facie case for the relief requested," as required by 37 C.F.R. § 42.20(c).  A148, A142.  The patentability analysis in HPL's motion to amend was limited to the prior art cited in the petition, which was "insufficient to demonstrate patentability of the substitute claims over the prior art in general."  A148.  The Board may have reached a different result had HPL simply "discussed the level of ordinary skill in the art, and what was known previously regarding the features added in the substitute claims."  *Id*.

Finally, the Board found that "one with ordinary skill in the art would have recognized that the data items provided in [Smith's] notification message would contain sufficient information to identify *the exact location* of the remotely stored message so that the system can retrieve the message from the remote server and send it to the mobile device."  A147 (emphasis added).  Thus, the Board found that HPL's principal new limitation ("a message ID identifying the message by

specifying the address in the storage unit for the message") would have been

obvious in light of Smith. *Id.*, A564.

## SUMMARY OF ARGUMENT

The Board faithfully applied the procedural and substantive rules governing

*inter partes* review proceedings, and its decision invalidating the challenged claims

as obvious in light of Smith should be affirmed.

The Board reasonably construed "information identifier identifying the

information" and "message identifier identifying the message" as "data that

identify the remotely stored [information or message], facilitating the process of

locating and retrieving the remotely stored [information or message]." A99. That

construction comports with the '241 patent's explanation that messages and

information "may be identified in a number of ways." A223. HPL's argument to

the contrary fails to account for the broadest reasonable construction standard, and

ignores the first half of the Board's claim construction, which clarifies that

information and message identifiers "identify" the specific content requested by an

end user. A107. HPL attempts to evade the Board's commonsense construction

by distinguishing identifying information from descriptive material, but that

distinction has no basis in the '241 patent, which states unequivocally that

"identifying information" includes "descriptive material about the message."

A216 (3:24-28).

HPL waived its challenge to the Board's construction of the term "address of the information stored in the storage unit" by failing to raise that issue before the Board.  It is hornbook law that "'litigants waive their right to present new claim construction disputes if they are raised for the first time after trial.'" *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs.*, 628 F.3d 1359, 1376 (Fed. Cir. 2010) (quoting *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008)).  Even if HPL's challenge were not waived, it would fail because the Board properly recognized that "the address of the storage unit" can serve as "the address of the information stored in the storage unit"—for example when "the address of the server or the storage unit . . . would direct the system to locate the information." A127–128.

The Board correctly held that HPL's patent claims were obvious in light of Smith, and the credibility determinations and factual findings underlying that holding are supported by substantial evidence.  HPL raises three principal objections to the Board's analysis, none of which hold up to careful scrutiny.  First, the Board credited expert testimony that Smith discloses a selective-messaging system that uses data items (*e.g.*, the sender's e-mail address and a time and date stamp) to identify and retrieve remotely stored content selected by the end user. *See* A124–128.  Although HPL argues that each data item is incapable of identifying a particular message, the record shows that the data items disclosed in

Smith "*collectively* . . . provide the function of identifying the remotely stored

information or message." A122 (emphasis added). Second, the Board's

conclusion that Smith would have suggested an information identifier "specifying

an address of the information" is supported by Smith's disclosure of notification

messages specifying "the name and address of the email server" where each

message is stored. A127–128. HPL insists that the '241 patent recites a more

granular approach, but that simply is not true; the '241 patent requires only that the

"identifier specif[y] *an* address of the information stored in the storage unit," not

*the exact* memory address in the storage unit. A225 (21:4–5) (emphasis added).

Third, there is ample support for the Board's finding that Smith would have

suggested to one of ordinary skill in the art a message identifier "comprising a

code, unique code, or number." A126–128. Expert testimony cited by the Board

establishes that the data items disclosed in Smith could readily be combined to

form a unique code or identifier for purposes of identifying a particular remotely

stored message. *See* A133 (final written decision citing Dr. Mitchell's declaration,

A1472).

      The Board properly rejected HPL's motion to amend for three reasons, each

of which is independently sufficient for affirmance. First, HPL's motion did not

provide adequate written description support for its substitute claims. The motion

failed to show support for the substitute claims in the '241 patent's original

22

application disclosure, as required by 37 C.F.R. § 42.121(b)(1), and likewise failed to provide support for the substitute claims in *each* of the earlier disclosures HPL relied on for its priority claim, as mandated by § 42.121(b)(2). HPL quibbles with the Board's interpretation of these rules, but its arguments contradict the plain text of § 42.121(b)(1), and fail to account for the *Auer* deference accorded to the Board in administering its rules. Second, the Board properly held that HPL failed to make a *prima facie* showing that its substitute claims were novel and nonobvious, as required by § 42.20(c). HPL maintains that the Board had no authority to require such a showing, but the Board's interpretation of § 42.20(c) is entitled to *Auer* deference as consistent with Patent Office guidance and with the overall statutory scheme. Nor is there any conflict with 35 U.S.C. § 316(e), which allocates a burden of *persuasion*, whereas the Board's rule allocates a burden of *production*. In any event, § 316(e) has no bearing on motions to amend, which are governed instead by § 316(d). Third, the Board correctly held that HPL's substitute claims could not succeed because they would be obvious in light of Smith. That conclusion is supported by substantial evidence, including expert testimony showing that the data items disclosed in Smith "contain sufficient information to identify the exact location of the remotely stored message." A147.

The Board did not abuse its discretion in denying HPL's motion for late submission of supplemental information. HPL had at least 8 months to identify

23

evidence to antedate Smith, and had the late-submitted information in its possession throughout that period.  Yet HPL waited until nearly a month after the relevant deadline—and just a few weeks before appellees' reply was due—to act. Under those circumstances, the Board was well justified in holding that HPL's motion would unduly prejudice appellees.  A46–47.  Even if the Board's conclusion was erroneous, the error would be harmless because HPL could not possibly have shown that the late-submitted information, which had been in its possession for at least five years, "reasonably could not have been obtained earlier."  37 C.F.R. § 42.123(b); *see also* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error").

Finally, the Board's conclusion that HPL failed to establish conception prior to April 23, 1997—the priority date of the Smith patent—is supported by substantial evidence.  HPL based its prior-conception argument on self-serving testimony by named inventor Richard Helferich and an undated, unsigned handwritten specification.  The Board sensibly concluded that inventors may not "seek to corroborate their testimony with a document and, at the same time, attempt to corroborate the date of the document with their testimony."  A137.  And the Board reasonably rejected HPL's remaining evidence, none of which "specifically related" to the '241 patent's claims, as too vague to corroborate Helferich's testimony.  A138–140.

# ARGUMENT

## I.    Standards Of Review

While claim construction is a question of law, this Court reviews the Patent Office's interpretation of disputed claim language to determine whether it is "reasonable." *In re Morris*, 127 F.3d 1048, 1055 (Fed. Cir. 1997).[5]

"Obviousness is a legal conclusion based on underlying findings of fact." *In re Mettke*, 570 F.3d 1356, 1358 (Fed. Cir. 2009).  What the prior art discloses is a factual inquiry.  *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085, 1088 (Fed. Cir. 1995).  This Court reviews Board factual findings for substantial evidence.  *In re Gleave*, 560 F.3d 1331, 1335 (Fed. Cir. 2009).  Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  "If the evidence in record will support several reasonable but contradictory conclusions," this Court "will not find the Board's decision unsupported by substantial evidence simply because the Board chose one

---

[5] On October 15, 2014, the Supreme Court heard oral argument regarding the standard of review applicable to a district court's factual findings in support of its construction of a patent claim term.  *See* Pet. for Cert. i, *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, No. 13-845 (U.S. filed Jan. 26, 2014).  Although that issue is not directly relevant here given the separate standard of review for agency decisions, *see* 5 U.S.C. § 706(2)(E), the Supreme Court's decision in *Teva* may nonetheless have some bearing on this Court's review of the Board's factual findings.

conclusion over another plausible alternative." *In re Jolley*, 308 F.3d 1317, 1320 (Fed. Cir. 2002).

The Patent Office's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted).

This Court applies the *Chevron* framework to Patent Office rulemaking pursuant to a congressional delegation of authority, *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649 (1990), which includes rules governing the conduct of Patent Office proceedings, *Cooper Technologies Co. v. Dudas*, 536 F.3d 1330, 1337 (Fed. Cir. 2008). Under *Chevron*, courts must give effect to the unambiguously expressed intent of Congress; however, if the statute is silent or ambiguous with respect to a specific question, the issue is whether Patent Office rules are based on a "permissible," *i.e.*, reasonable, construction of the statute. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). If Congress explicitly left a gap for the Patent Office to fill, the resulting regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. *See id.* at 843-44.

This Court reviews discovery rulings for an abuse of discretion. *See Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012) (federal district court); *Kirkendall v. Dep't of the Army*, 573 F.3d 1318, 1321 (Fed. Cir.

2009) (administrative agencies).  Board actions may not be set aside unless "arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law." *In re Sullivan*, 362 F.3d 1324, 1327 (Fed. Cir. 2004); *see also* 5 U.S.C. § 706(2)(A).

## II.    The Board's Claim Construction Should Be Affirmed

In an *inter partes* review, the Patent Office gives claims in an unexpired patent their broadest reasonable construction in light of the specification.  37 C.F.R. § 42.100(b).  HPL has not challenged the Patent Office's decision to apply the broadest-reasonable-construction standard to *inter partes* reviews.

Under this standard, claim terms are given their "broadest reasonable meaning of the words in their ordinary usage as they would be understood by one of ordinary skill in the art," taking into account the specification.  *Morris*, 127 F.3d at 1054. Although an inventor may narrow the ordinary meaning of claim terms by providing a definition of the term in the specification with reasonable clarity, deliberateness, and precision, *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994), limitations are not otherwise to be read from the specification into the claims, *In re Van Geuns*, 988 F.2d 1181, 1184 (Fed. Cir. 1993).

**A.**    **The Board's Constructions Of "Information Identifier Identifying The Information" And "Message Identifier Identifying The Message" Should be Affirmed**

The Board construed the terms "[information/message] identifier identifying the [information/message]" to mean "data that identify the remotely stored [information/message], facilitating the process of locating and retrieving the remotely stored [information/message]." A99.  As explained by the Board, A98–107, the specification makes clear that information and messages may be identified in a number of ways, *see*, *e.g.,* A223 (18:56-67); A102.  In the context of the claims, the "identifier" terms have the function of identifying the remotely stored information, and facilitating the process of locating and retrieving that information. A101–102.  The Board's construction, therefore, is both reasonable and consistent with the specification, and should be affirmed.

HPL's criticism of the Board's claim construction of the terms "[information/message] identifier identifying the [information/message]" rests on erroneous premises.  First, HPL attacks a construction that the Board did not adopt. HPL claims that the Board "construed 'message identifier identifying the message' to include any descriptive data 'facilitating the process of locating and retrieving the remotely stored message'—even if the data do not actually *identify* the particular message." Br. at 26.  That criticism ignores that the Board construed "message identifier identifying the message" as "*data that identify the remotely*

28

*stored message*, facilitating the process of locating and retrieving the remotely stored message." A99 (emphasis added). HPL excises the first half of the Board's construction, then finds the remaining half wanting.

HPL's error is illustrated by its library-book analogy. Br. at 29. HPL asserts that the Board's construction would treat the color of a library book cover (*e.g.*, green) as a "book identifier" because the book color "may 'facilitat[e] the process of locating and retrieving' the book." *Id.* But unless there is only one green book in the library, the color neither "identifies" the book nor "facilitates" the process of locating the book, as the Board used those terms. The Board added the term "facilitating the process of locating and retrieving the remotely stored message" to its construction based on its recognition that the claims "require the system to locate *the* remotely stored message on the server and perform the action on the message." A107 (emphasis added). And the Board narrowed its earlier initial construction from "descriptive material about the information" to "data that *identify* the information." A98–99 (emphasis added).

Moreover, the Board's construction does not limit an "identifier" to be a unique "code" or "token." Instead, the Board's construction requires that an "identifier" have sufficient data to identify a particular object (whether a book, a message, or information). Taking HPL's library-book analogy, a Dewey decimal number could be an identifier, but so could the author and title of a book. In a

messaging system, a message may be identified with a unique code or memory address, A223 (17:67–18:3), but the message could also be identified with an email address and a time and date stamp, as long as that information enabled the "system to locate the remotely stored message on the server and perform the action on the message." A107.

Second, HPL asserts that the '241 patent "consistently" treats information identifiers and message identifiers as "distinct" from descriptive material. Br. at 25. That is also incorrect. The '241 patent expressly teaches that "descriptive material" can be a type of "identifying information":

> The system may transmit some *identifying information* about the page to the user without sending the entire message. *For instance*, the base station may *identify the type of message*, such as email, voice, or text, and *also indicate the caller or other descriptive material* about the message. The user can then determine the priority of the message and whether he or she wants to retrieve the message, play the message, erase the message, store the message, forward, reply, or otherwise act on the message. *The user is also given control over the messages* stored remotely from the paging transceiver and can erase or store these messages from the paging transceiver.

A216 (3:24–35) (emphases added). Information identifiers can thus encompass the type of message, the message source, and "*other descriptive material about the message*." *Id.* That does not mean descriptive material will always qualify as a "message identifier." For example, because a user may receive multiple messages from the same caller, descriptive material that identifies only the caller may be

insufficient to identify *the* message.  But the above-excerpt from the patent teaches that descriptive information can be used to give the user "control over the messages."

HPL's claim differentiation argument also fails.  *See* Br. at 25.  HPL asserts that "descriptive information" must be "distinct" from the "information identifier" or "message identifier" because dependent claims state, for example, that the "selective call signal comprising an information identifier" "further includes descriptive information."  *Id.*; A224–226 (*see, e.g.,* cls. 1 and 31, 71 and 92). However, the term "descriptive information" recited in dependent claims 31 and 92 further limits the "selective call signal," which does not preclude the "information identifier" from including descriptive information.  Thus, dependent claims 31 and 92 add a further limitation to independent claims 1 and 71, and are therefore not redundant.

Finally, HPL criticizes the Board for failing to import limitations from its preferred embodiments into the construction of "message identifier."  For example, HPL argues that message identifier should be a "unique code" or precise "address." Br. at 24.  But the '241 patent specifically teaches that those embodiments are optional: "[T]he message *may be identified in a number of ways*, such as with a message code or by specifying the location in memory where the message is stored."  A223 (18:60–63) (emphasis added).  Moreover, both this Court's law,

31

*Superguide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004) (A99, A104–105), and the specification of the '241 patent (A224 (19:48–53); A105), teach that limitations from the preferred embodiments are not to be imported into the claims.

### B. HPL Waived Any Argument That The Board Improperly Construed "Address Of The Information Stored In The Storage Unit"

The Board did not construe the term "address of the information stored in the storage unit" because HPL did not identify this limitation as needing construction in either its response or its preliminary response. As this Court has "repeatedly explained, litigants waive their right to present new claim construction disputes if they are raised for the first time after trial." *Lazare Kaplan*, 628 F.3d at 1376 (internal quotation marks omitted).

Moreover, the Board's analysis did not conflate two distinct concepts. Rather, the Board explained that in certain circumstances, the "address of the storage unit" *can be* "the address of the information stored within the storage unit." A127–128. For example, a business's address can be both "123 Cherry Lane" and "123 Cherry Lane, Suite 4500." As long as customers arriving at the building are directed to the appropriate suite (perhaps by a sign in the lobby), the business can distribute "123 Cherry Lane" as its address. Similarly, as long as the "address of the server . . . would direct the system to locate the information," the address of the

32

server suffices as the address of the information. A127. Regardless, the issue on appeal is whether the Board's determination that Smith taught an "information identifier" that "specifies an address of the information stored in the storage unit" is supported by substantial evidence. As explained below, it clearly is.

## III.    The Board Correctly Concluded That Smith Invalidates The '241 Patent

### A.    The Board's Finding That Smith Discloses An "Information Identifier Identifying The Information" And A "Message Identifier Identifying The Message" Is Correct And Supported By Substantial Evidence

The Board correctly found that Smith disclosed notification messages with a "message identifier identifying the message" because Smith's notification messages enable the user to "request a download of a particular remotely stored message." A124.

That factual finding about what Smith teaches to a person skilled in the art is supported by substantial evidence. Indeed, most of the Board's findings are based on credibility determinations. The Board found the testimony of appellees' expert, Dr. Mitchell, credible as consistent with Smith's disclosure. A124. HPL appeals those findings as incorrect or conclusory, but fails to acknowledge the Board's reasoning and credibility determinations.

First, HPL argues that "rather than use a specific message identifier to identify the message in remote storage, Smith uses the then-standard 'you have

mail' indication," requiring the user to "log in and interact with Smith's remote storage system to find the new message." Br. at 31–32. That is not so. As the Board recognized, "Smith's integrated message center (*see, e.g.*, Figures 7A and 7B) provides a graphical user interface display on the user's mobile telephone," that permits the user to download "*the particular* remotely stored message from the server to the mobile telephone." A126. Contrary to HPL's claim that the user must "interact" with the remote storage unit to "find" the message, Smith clearly teaches that the "user can select one of the pending messages for retrieval based on the entries in the single selectable list" composed of notification messages. A1241 (2:41–48). "In response to user selection, the integrated message center retrieves *the selected pending message* for viewing and manipulation by the user." *Id.* (2:48–50) (emphasis added). Dr. Mitchell testified that this feature means that "Smith discloses an information identifier that identifies stored information." A124. The Board "credit[ed] Dr. Mitchell's testimony because it [was] consistent with Smith's disclosure." *Id.*

Moreover, even if HPL were correct that Smith required a user to interact with the remote server, that would not be relevant to obviousness. The touchstone is the language of the claims, which requires a "message identifier *identifying the message*" and an "information identifier *identifying the information*." Smith discloses that its notification messages contain information that identifies and

34

enables retrieval of a specific "selected pending message." A1241 (2:41–50). And HPL's argument that the Patent Office previously concluded that Smith's "message can be retrieved because the user interacts with the remote server to locate the message" is without merit.[6] *See* Br. at 33-34.

Second, HPL claims that Smith fails to disclose the "key characteristic of the 'message identifier' in the '241 patent," (*i.e.*, allowing "the mobile device to positively identify and retrieve a specific stored message"). Br. at 34. HPL made the same argument to the Board, relying on expert testimony to show that the

---

[6] HPL's argument that the Patent Office previously held that Smith does not disclose "Mr. Helferich's '[information/message] identifier" ignores a crucial distinction between the claims of U.S. Patent No. 7,280,838 ("the '838 patent") and the claims of the '241 patent. *See* Br. at 32–34. The claims of the '838 patent relate to a specific two-server system and claim an "information identifier that is associated with information stored in the second system." A5036. In a nonappealable decision, an individual examiner found that Smith failed to disclose an "information identifier" within this specific two-server system because the identifier in Smith used to "identify and retrieve the email from server 5800 could be different from the identifier sent by the telephone to network services provider 1200 to retrieve said message" given the possibility of using a "state table at an intermediate server." A4022–23. Contrary to HPL's implication, that examiner did not conclude that the message in Smith can be retrieved "because the user interacts with the remote server." *Compare* Br. at 33, *with* A4022–23. Thus, there is no change in agency position. Even if there were, the Board's sixty-two page decision provides a more than adequate explanation. Moreover, HPL's suggestion that the appellees should somehow be estopped, Br. at 34, based on an individual examiner's nonappealable determination is contrary to established law. *See Block v. U.S. Int'l Trade Comm'n*, 777 F.2d 1568, 1571-72 (Fed. Cir. 1985) (an order is not preclusive when "there has been no opportunity for appellate review").

information in Smith's notification message did not "identify a particular remotely

stored message":

> HPL's experts testify that *the sender's information* (e.g., name, telephone number, e-mail address) or the name and address of the e-mail server *does not identify a particular remotely stored message, because the same sender from the same system may have sent several messages*, and the server handles very large quantities of messages. In particular, Dr. Grindon declares that the name and telephone number of a sender is not the same as providing a particular "file name" or "file number" that establishes a particular item of information (e.g., from among other items of information) from the sender. Dr. Grindon also testifies that "the time and date stamp cannot be used by the storage system to identify the content because the storage system did not generate, and is not aware of, the time and date stamp."

A121–22 (emphases added; citations omitted). The Board found HPL's experts

unpersuasive because "they narrowly focus on *each data item* in Smith's

notification message individually" (*e.g.*, sender's name, telephone number) and

"*fail to consider Smith's disclosure as a whole* from the perspective of one with

ordinary skill in the art." A122 (emphases added). HPL's arguments and expert

testimony "*fail to recognize that the data items collectively, as disclosed in Smith,*

*provide the function of identifying the remotely stored information or message* and

facilitating the process of locating, retrieving, and downloading the stored

information or message from the server to the mobile telephone." *Id.* (emphasis

added).

The Board explained that "[a]lthough one of the functions of the notification message is to identify the source of the actual remotely stored message, Smith discloses that the user can request a download of a particular remotely stored message from the server to the mobile device using the data items provided in the notification message that corresponds to the remotely stored message." A124.

The Board's finding is confirmed by Smith's clear disclosure, which states:

> When the user wants to retrieve *the e-mail message* after viewing the e-mail notification message, *the user first selects the e-mail icon corresponding to the e-mail message* from the message center display (FIGS. 7A and 7B), and then instructs mobile telephone 1100 *to retrieve the e-mail message* by pressing the "View" button. In response, mobile telephone 1100 establishes a connection with network services provider 1200 to download the e-mail message from e-mail server 5800.

A1245 (10:48–56) (emphases added). It is also supported by Dr. Mitchell's testimony, which the Board credited.[7] A124.

---

[7] HPL claims that Dr. Mitchell "agreed that the information provided in Smith's notification alone is insufficient for the mobile device itself to identify and then act on the remotely stored information." Br. at 35. This is incorrect. Dr. Mitchell actually testified that "someone familiar with the technology" would understand that "there are various ways to include information" in Smith's "notification message" in addition to the message source and type "to support the processing." A5723–26. He explained that "[t]here has to be some either convention or information sent back and forth to indicate" a specific message out of several from the same source, and "someone implementing this would naturally include some number to indicate which of the pending messages" is referred to in the notification message. *Id.*

Finally, HPL argues that simply because "Smith and the '241 patent achieved the same result—'permit[ting] the user . . . to retrieve' the stored message—that does not mean that the Smith reference contains a 'message identifier.'" Br. at 36 (arguing that the "Board's analysis reduces to the assumption that Smith must have a 'message identifier' because the Smith system performs similar functions to the '241 patent"). HPL again fails to acknowledge the Board's actual analysis. The Board did not assume that Smith disclosed a "message identifier" based on its functionality. Rather, the Board explained why the notification message in Smith must contain a "message identifier":

> As HPL's expert, Dr. Hunt, explains, "the e-mail server handles very large quantities of messages in a short amount of time." In response to the user's request for downloading a particular message, the mobile device establishes a connection with the network services provider to download the remotely stored message. The server uses the information provided by the mobile device to identify and locate the particular message among large quantities of messages, and then downloads the particular message to the user's mobile device. Therefore, the data items in the notification message also serve the function of identifying the remotely stored message, facilitating the process of locating and retrieving the particular remotely stored message from the server to the mobile device.

A126 (citations omitted). Because Smith's server "uses the information provided by the mobile device to identify and locate *the particular message* among large quantities of messages," the information provided by the mobile device (which

38

came from the notification message) must be capable of identifying a particular message.  *See id.* (emphasis added).

### B. The Board's Finding That Smith Taught An Identifier "Specifying An Address Of The Information Stored In The Storage Unit" Is Correct And Supported By Substantial Evidence

The Board also correctly found that Smith would have suggested an information identifier "specifying an address of the information."  A127–28.  As the Board noted, Smith discloses that its notification message includes certain identifying information about the message, including (in the case of an email message) "the *name and address of e-mail server*."  A127.  Because Smith discloses that the "user at the mobile device can use the information provided in the notification message to request a download of the remotely stored message," the Board concluded that "Smith would have suggested to one with ordinary skill in the art . . . a message identifier or information identifier . . . specifying an address of the information."  A127–28.

This finding should be affirmed for two independent reasons.  First, the Board found that Smith's notification message specified an address of the e-mail server for an email message.  A127.  The Board also found that "the address of the server . . . where the information is stored" is an "address of that information."  *Id.* The relevant claims (claims 23 and 94) require only that the "identifier specifies *an* address of the information stored in the storage unit," not that the identifier

specifies *the exact memory location* of the information stored in the storage unit.[8]

Because the Board's finding that the address of the server qualifies as *an* address

of the information is supported by substantial evidence, *see, e.g.,* A1242 (4:44–49);

A127, the Board's obviousness determination should be affirmed.

Second, the Board also found that, given Smith's disclosure that its

notification message can be used to request the download of a specific stored

message, Smith would have suggested to a person skilled in the art to use an

information identifier "specifying an address of the information." A128. HPL has

not identified any error in this finding.

### C. The Board's Finding That Smith Taught An Identifier Including A "Code" Is Correct And Supported By Substantial Evidence

The Board also correctly found that Smith would have suggested to one with

ordinary skill in the art a message identifier "comprising a code, unique code, or

number." A127-28. HPL claims that this conclusion should be reversed because it

was based on unsupported analysis. Br. at 39. But HPL fails to recognize that

obviousness "analysis need not seek out precise teachings directed to the specific

subject matter of the challenged claim, for a court can take account of the

inferences and creative steps that a person of ordinary skill in the art would

---

[8] Even if they did, the Board correctly found that the data items in Smith's notification message "contain sufficient information to identify *the exact location* of the remotely stored message." A147 (emphasis added).

employ." *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398, 418 (2007).  That is exactly what the Board did in this case, and its finding is supported by substantial evidence.

The Board relied on the following testimony from Dr. Mitchell to support its conclusion that Smith suggests a code:

> One skilled in the art reading Smith would understand that Smith discloses that information and messages are identified by using a "code, "unique code," and "number" as recited in claims 13, 15, 16, 53, 54, 56, 84, 86, and 87. Exhibit 1006, col. 16:28-30 and 43-47. *Without a unique code, it would not be possible to universally perform "retrieving the selected pending message from the mail server for viewing and manipulation by the user" and the mail servers include "voice mail," "fax mail," and "e-mail" servers, as disclosed in Smith.*  Exhibit 1006, col. 16:28-30 and 43-47 [ ].  The messages and information are retrieved from a memory address.

A1749 ¶ 22 (emphasis added); A776–777 (appellees' reply citing Dr. Mitchell's declaration); A127–28 (final written decision citing appellees' reply); A133 (same).  The Board explained that the data elements described in Smith—"the sender's telephone *number*, the sender's e-mail *address*, a *time and date stamp*, and the name and *address* of the e-mail server," A128 (emphasis in original)— "*collectively* . . . provide the function of identifying the remotely stored information or message and facilitating the process of locating, retrieving, and downloading the stored information or message from the server to the mobile

telephone," A122 (emphasis added) (likewise citing Exhibit 1006). HPL asserts that the Smith data elements could not identify "one message out of many," Br. at 40, but it errs by analyzing those elements in isolation, rather than "collectively" as the Board did. Although the sender's e-mail address alone might not identify a specific message, the critical point—and the one the Board made in its decision— is that it would have been obvious to one skilled in the art to *combine* the various Smith data elements to produce a code or number that can identify one message out of many. *See* A122, A128, A133; *see also* A102 (quoting the '241 patent's statement that "the message may be identified in a number of ways"). For example, even when a "system gets two emails from the same person," Br. at 40, it could identify the first-in-time message as arriving one second after noon (12:00:01) and the other as arriving two seconds after noon (12:00:02). HPL ignores this evidence, which plainly provides a sufficient basis for the Board's conclusion.

## IV.    The Board Properly Denied HPL's Motion To Amend

The Board denied HPL's motion to amend its patent claims because the motion was procedurally and substantively defective. The Court should affirm that ruling for three reasons, each of which is independently sufficient. First, HPL failed to establish written-description support for its substitute claims, as required by 37 C.F.R. § 42.121(b). A143–144. Second, HPL failed to make a *prima facie*

showing that its substitute claims were patentable, as required by 37 C.F.R.

§ 42.20(c).  Third, the Board properly found that HPL's substitute claims would be

obvious in light of Smith.

### A.    HPL Failed To Establish Written Description Support For Its Substitute Claims

Motions to amend must set forth "support in the original disclosure of the

patent for each claim that is added or amended" and "support in an earlier-filed

disclosure for each claim for which the benefit of the filing date of the earlier filed

disclosure is sought."  37 C.F.R. § 42.121(b).  The Board properly held that HPL's

motion failed to meet either of those basic requirements.

With respect to the first requirement, § 42.121(b)(1), the Board inquired

"whether the *original disclosure of the application* relied upon reasonably conveys

to a person of ordinary skil[l] in the art that the inventor had possession of the

claimed subject matter as of the filing date."  A143 (citing *Ariad Pharms., Inc. v.*

*Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).  HPL's motion

failed to meet that standard because it did not include a copy of the original

disclosure of Application No. 11/050,755 (which later issued as the '241 patent) or

cite the original disclosure from that application in support of the proposed

substitute claims.  A143.

HPL quibbles with the Board's conclusion for two reasons, neither

meritorious.  *See* Br. at 46–49.  First, HPL maintains that its reply in support of the

motion to amend included both missing elements. Br. at 47. That argument is unsustainable in light of § 42.121(b)(1)'s plain text, which requires written description support to be "set forth" in the "motion" to amend, not in a later-filed reply. *See also Adv. Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) (arguments made for the first time in a reply brief are waived).

Second, HPL contends that its motion was sufficient because the written-description support required by § 42.121(b)(1) must appear in "the original disclosure *of the patent*" and not, as the Board concluded, in the application corresponding to that patent. Br. at 48. The Board's interpretation easily clears the "plainly erroneous or inconsistent with the regulation" standard (*Auer*, 519 U.S. at 461 (internal quotation marks omitted)) given this Court's articulation of the written-description test in *Ariad*. There, the Court explained that "the test for sufficiency is whether the disclosure *of the application* relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351 (emphasis added); *see also* A143 (citing *Ariad* and reciting a nearly identical rule). Section 42.121(b)(1) imposes a requirement for written-description support, and it was

eminently reasonable for the Board to rely on binding judicial precedent in its construction of that requirement.[9]

Separate and apart from the defects noted above, the Board also rejected HPL's motion because it did not show support for the substitute claims in "*each* earlier-filed application for which the benefit of the filing date of the earlier-filed disclosure is sought." A143 (emphasis added). The '241 patent issued from the '775 application, which is a division of Application No. 09/688,321, which is a division of Application No. 08/934,143. HPL's motion to amend sought the benefit of the filing date of the grandparent '143 application for each of its proposed claims. A143. It is well-settled law that "to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain

---

[9] The Board is entitled to *Auer* deference with respect to the rules for *inter partes* review proceedings because it is the entity charged by Congress with conducting those proceedings. 35 U.S.C. §§ 6(b)(4), 316(c). Indeed, the Patent Act "authorizes appeals to this court [in *inter partes* proceedings] only from 'the final written decision of the [Board] under section 318(a).'" *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir. 2014) (quoting 35 U.S.C. § 319) (second alteration in original). Although the Board did not promulgate the regulations at issue here, it stands in the shoes of the Patent Office when interpreting them. *See FirstHealth of the Carolinas, Inc. v. CareFirst of Md., Inc.*, 479 F.3d 825, 829 (Fed. Cir. 2007) (according *Auer* deference to the Trademark Trial and Appeal Board's interpretation of a Patent Office regulation); *Custom Computer Servs. v. Paychex Props.*, 337 F.3d 1334, 1336 (Fed. Cir. 2003) (same); *see also Linares Huarcaya v. Mukasey*, 550 F.3d 224, 228–230 & n.2 (2d Cir. 2008) (per curiam) (according *Auer* deference to the Board of Immigration Appeals with respect to the meaning of a regulation promulgated by the Department of Justice).

leading back to the earlier application must comply with the written description

requirement of 35 U.S.C. § 112." *Zenon Envtl., Inc. v. U.S. Filter Corp.*, 506 F.3d

1370, 1378 (Fed. Cir. 2007) (quoting *Lockwood v. Am. Airlines, Inc.*, 107 F.3d

1565, 1571 (Fed. Cir. 1997)).  Thus, HPL was required to show support for its

substitute claims not only in the '775 application, but in the '321 and '143

applications as well.  *See* 37 C.F.R. § 42.20(c) ("The moving party has the burden

of proof to establish that it is entitled to the requested relief.").  This HPL failed to

do.  Indeed, HPL has *never* identified support in the parent '321 application for its

proposed claims.

HPL contends that it did not need to make this showing because

§ 42.121(b)(2) states that a "motion to amend claims must" set forth the "support

in an earlier-filed disclosure for each claim for which benefit of the filing date of

the earlier filed disclosure is sought."  Br. at 49.  But that regulation merely

describes a necessary, not a sufficient showing.  The Board considered

§ 42.121(b)(2) and determined that it did not alleviate HPL's obligation to show

continuity of written description support.  A143–144.  That interpretation is

entitled to deference because it is consistent with the Patent Office's explanation

that motions to amend "must . . . set forth the support in the original disclosure of

the patent as well as *any* application for which benefit of the filing date of the

earlier filed disclosure is sought,"  Office Patent Trial Practice Guide, 77 Fed. Reg.

48,756, 48,766 (Aug. 14, 2012) (emphasis added), and because it comports with judicial precedent concerning an analogous statutory provision, *see Zenon*, 506 F.3d at 1378.

HPL claims that there is no substantive deficiency in its failure to show support in the parent '321 application for its proposed claims because "all of the patents at issue have the same specification." Br. at 49. If HPL can meet its burden to show written description support by simply asserting that the specifications are the same, then it can effectively shift the burden to obtain and compare the original disclosures of those applications to the Board and to appellees. However, as the Board recognized, the "burden should not be placed on the Board to sort through HPL's patents and the original disclosures of the '775 application and the two earlier-filed applications for which benefit is sought, to determine whether each proposed substitute claim is supported by the original disclosures of the '775 application and each of the earlier-filed applications." A144.

**B.    The Board Properly Required HPL To Make A Prima Facie Showing Of Patentability**

The Board denied HPL's motion to amend because it failed to "set forth a prima facie case" that HPL's substitute claims were patentable, and therefore "fail[ed] to meet [HPL's] burden of proof under 37 C.F.R. § 42.20(c)." A142, A148. HPL argues that this conclusion was unlawful because "the PTO's

47

regulations do not and could not require HPL to show that the amended claims would be patentable." Br. at 43. The argument is meritless.

As an initial matter, Patent Office regulations *do* require a preliminary showing that substitute claims are patent-eligible. A patent owner is not entitled to amendment as of right in an *inter partes* review; rather, it must move for permission to amend. *See* 35 U.S.C. § 316(d); 37 C.F.R. § 42.121. That permission is granted only if the patent owner "establish[es] that it is entitled to the requested relief." 37 C.F.R. § 42.20(c). And the Patent Office has made clear that a party seeking to amend its patent claims "*must* include a statement . . . that clearly points out the patentably distinct features for the proposed new or amended claims." Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48,612, 48,626 (Aug. 14, 2012) (emphasis added); *see also* 77 Fed. Reg. 48,756, at 48,767 (discussion of the "patentably distinct features" of a substitute claim "will aid the Board in determining whether the amendment narrows the claims and . . . is responsive to the grounds of unpatentability involved in the trial").

The Board has consistently interpreted § 42.20(c) as requiring a *prima facie* showing of patentability. *See, e.g.*, *Idle Free Sys., Inc. v. Bergstrom, Inc.*, No. IPR2012-00027, 2013 Pat. App. LEXIS 6302, *8–11 (P.T.A.B. June 11, 2013); *Int'l Flavors & Fragrances, Inc. v. United States*, No. IPR2013-00124, 2014 Pat.

48

App. LEXIS 3073, *13-14 (P.T.A.B. May 20, 2014). That interpretation is reasonable and therefore entitled to *Auer* deference. This is so not only because the interpretation is consistent with the Patent Office's description of the patent owner's burden, *see* 77 Fed. Reg. 48,612, at 48,626, but also because the Patent Office has explicitly authorized the Board to "order additional showings or explanations as a condition for authorizing a motion," 37 C.F.R. § 42.22(d); *see also Idle Free*, 2013 Pat. App. LEXIS 6302, at *2, *9 (dismissing a deficient motion and discussing "important requirements for a patent owner's motion to amend," including evidence "show[ing] a patentable distinction of each proposed substitute claim over the prior art"). The Board's interpretation is also reasonable given the nature of motions to amend. Such motions seek to alter the terms of a patent that has already been scrutinized for compliance with the Patent Act's novelty and nonobviousness requirements. It would make little sense to grant a motion to amend when the movant fails to make even a preliminary showing that its substitute claims could meet the same statutory requirements.

HPL insists that the Board's interpretation is inconsistent with 37 C.F.R. § 42.121(a)(2)(i), which states that "[a] motion to amend may be denied where [t]he amendment does not respond to a ground of unpatentability involved in the trial." Br. at 43–44. But there is no inconsistency. Section 42.121(a)(2)(i) merely enumerates one ground on which a motion to amend *may* be denied; it does not

49

purport to describe *every* possible basis for denial.  Nor could it, given the innumerable other regulations a motion to amend must satisfy.  *See, e.g.*, 37 C.F.R. §§ 42.121(b) (requiring a "claim listing" and support for substitute claims in prior disclosures); 42.121(a) (requiring consultation with the Board prior to filing a motion to amend); 42.22 (imposing additional prerequisites).  This is why the Patent Office explained that "[f]ailure to comply with [§ 42.121(a)(2)], *or any other*, requirement in the regulation may result in denial of the proposed amendment(s)."  Changes to Implement *Inter Partes* Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents, 77 Fed. Reg. 48,680, 48,708 (Aug. 14, 2012) (emphasis added).  Under HPL's interpretation, the Board could not lawfully deny a motion to amend even if it violated the page size, font, spacing and page limit requirements set forth in the regulations.  *See, e.g.,* 37 C.F.R. §§ 42.6, 42.24(a)(v).

HPL also complains that the Board's interpretation "would turn every . . . motion [to amend] into a mini-trial of the merits."  Br. at 44.  This argument rests on a fundamental misconception of the Board's rule, which requires only a "*prima facie*" showing of patentability—that is, argument establishing that the substitute claims are patentable "on first appearance but subject to further evidence or information."  Black's Law Dictionary (9th ed. 2009).  To meet that minimal requirement, patent owners must provide "[s]ome representation" regarding "the

closest prior art known to the patent owner" and "the level of ordinary skill in the art." *Idle Free Sys., Inc. v. Bergstrom, Inc.*, No. IPR2012-00027, 2014 Pat. App. LEXIS 1400, *48–50, *54–55 (P.T.A.B. Jan. 7, 2014) (final written decision); *see also* A145 ("HPL should have indicated, at least, that the prior art cited in the petition is the closest prior art known to HPL with respect to the proposed amended claims"). Movants need not show patentability as against "every item of prior art," *Idle Free*, 2014 Pat. App. LEXIS 1400, at *48; instead, they are merely required to make "reasonabl[e]" efforts to show that their substitute claims could meet the Act's novelty and nonobviousness requirements, *id.*, at *51. The decision below is illustrative: The Board denied HPL's motion to amend because it did not "proffer *any* evidence as to the ordinary skill in the art" or the prior art "in general," A145–147 (emphasis added), not because HPL failed to make a full-dress showing that its substitute claims are novel and nonobvious.

Finally, HPL erroneously asserts that the Board's interpretation conflicts with 35 U.S.C. § 316(e), which places the burden of proving unpatentability on the petitioner.

The argument fails because it ignores the dual meaning of the term "burden of proof." Courts have long understood the burden of proof as encompassing two separate, but related concepts: the burden of persuasion and the burden of production. *Director, Office of Workers' Compensation Programs v. Greenwich*

*Collieries*, 512 U.S. 267, 272 (1994). The former is "the ultimate burden assigned to a party who must prove something to a specified degree of certainty," *e.g.*, "by a preponderance of the evidence," *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326-27 (Fed. Cir. 2008), while the latter establishes "which party bears the obligation to come forward with the evidence at different points in the proceeding," *Schaffer v. Weast*, 546 U.S. 49, 56 (2005).

There is no conflict between § 316(e) and the Board's statement that "the patent owner bears the burden of proof in demonstrating the patentability of the proposed substitute claims," A144–145, because the Board merely allocated a burden of *production* to HPL.

This distinction is borne out in the governing regulations. The Patent Office considered the interplay between § 316(e) and the rules for motions to amend in response to a commenter's observation that "the burden of persuasion does not shift to the patentee." 77 Fed. Reg. 48,612, at 48,626. Although the Patent Office agreed that the petitioner in an *inter partes* review "has the burden of proving the proposed ground of unpatentability as to the challenged patent claims," it clarified that a patent owner's motion to amend "must" nonetheless "include . . . a statement that clearly points out the patentably distinct features for the proposed new or amended claims." *Id.* That clarification is simply one iteration of the Patent Office's general motions-practice rule, which requires a "full statement of the

reasons for the relief requested, including a detailed explanation of the significance of the evidence including material facts, and the governing law, rules, and precedent." 37 C.F.R. § 42.22(a)(2). In both instances the rule allocates the burden of going forward with evidence—the burden of production—to the movant. *See Videotek*, 545 F.3d at 1327 ("the phrase 'going forward with evidence'" means "both producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record").

The Board has also treated the *prima-facie*-showing requirement as a burden of production. In *Idle Free*, for example, the Board explained that a patent owner must "come forward with technical facts and reasoning . . . sufficient to persuade the Board that the proposed substitute claim is patentable." 2013 Pat. App. LEXIS 6302, at *9. That language borrows directly from the Supreme Court's definition of the burden of production. *See Schaffer*, 546 U.S. at 56 (equating the burden of production with the "obligation to come forward with the evidence"). Likewise, the Board's decision in this case faulted HPL for failing to provide "*[a]t least some explanations* . . . as to why a person with ordinary skill in the art . . . would not have found the proposed claims obvious." A147 (emphasis added).

Moreover, the Board had no need to address burden of persuasion, given that HPL failed to satisfy its burden of production. The Board deemed it "unnecessary" to consider appellees' "opposition and HPL's reply" because HPL's motion to

amend failed to "set forth a prima facie case for the relief requested or satisfied its burden of proof." A148.

Although the Board's decision did not allocate a burden of persuasion to HPL, there would have been no conflict with § 316(e) even if it had. Section 316(e) dictates that the petitioner in an *inter partes* review has the burden of proof with respect to the ultimate issue of unpatentability. However, § 316(e) has no bearing on motions to amend, which are governed by a separate statutory provision, 35 U.S.C. § 316(d). Congress granted the Patent Office authority to "prescribe regulations . . . setting forth standards and procedures for allowing the patent owner to move to amend the patent under subsection (d)," 35 U.S.C. § 316(a)(9), and the Patent Office exercised that authority by promulgating the regulations described above. In doing so, the Patent Office explained that § 316(e) incorporates a "default evidentiary standard" that yields to a context-specific rule "[i]n the event that a patent owner files a motion to amend." 77 Fed. Reg. 48,612, at 48,626. That parsing of the statute is reasonable, and hence entitled to deference,[10] because it aids the timely completion of the review, *see* 35 U.S.C. § 316(b), by screening out unpatentable substitute claims at an early stage. *Cf.* 77

---

[10] *See Bender v. Dudas*, 490 F.3d 1361, 1368 (Fed. Cir. 2007) (according *Chevron* deference to procedural regulations issued by the Patent Office pursuant to an explicit statutory delegation of rulemaking power).

Fed. Reg. 48,680, at 48,706 (prompt denial of motions to amend "will increase efficiency and prevent delays" when "a patent owner facially cannot meet one of the requirements").  Indeed, it would be rational to allocate the burden of persuasion to the patent owner given the adjudicatory nature of *inter partes* review proceedings, *see Abbott Labs v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013), and the patent owner's unquestioned "burden to establish that it is entitled to the requested relief," 37 C.F.R. § 42.20(c), when seeking to revise its existing patent claims.

### C.    The Board Correctly Concluded That HPL's Substitute Claims Would Be Obvious Over Smith

The Board's denial of HPL's motion to amend should also be affirmed because the Board correctly found that the proposed claims in HPL's motion would be obvious in light of Smith.  The Board found that "[g]iven those teachings in Smith, one with ordinary skill in the art would have recognized that the data items provided in the notification message would contain sufficient information *to identify the exact location* of the remotely stored message."  A147 (emphasis added).  That finding of fact is entitled to deference because HPL has not shown that the Board lacked substantial evidence to support that finding.

## V.  The Board's Finding That Smith Is Prior Art Should Be Affirmed

### A.  The Board Did Not Abuse Its Discretion By Excluding HPL's Late Evidence

HPL sought to introduce evidence of conception nearly a month after the deadline set forth in the Board's scheduling order.  Appellees opposed this request on the grounds that (1) the delay was inexcusable because HPL had had notice that Smith had been used to reject the claims of the '241 patent for more than a year and (2) this late supplementation would prejudice the appellees, given their impending briefing deadlines.  A45–47.  The Board denied HPL's request based on its determination that the appellees' arguments had merit.  A46.

HPL could not have been surprised by the Smith reference.  It had notice of the reference since March 12, 2012, when it was applied by an examiner in an office action during an *inter partes* reexamination to reject the claims of the '241 patent.  A46.  And by September 25, 2012, HPL was aware that appellees were relying on Smith to challenge the validity of the '241 patent in this *inter partes* review.  HPL's patent-owner response was not due until May 28, 2013, and HPL even obtained an extension of that deadline until June 7, 2013.  Thus, HPL had plenty of time (at least eight months from the date of the petition) to identify evidence in support of its efforts to antedate Smith.

But HPL waited until July 5, 2013 to submit this evidence in the proceeding.  A46.  That was shortly before appellees were set to take four depositions in the

case and less than a month before appellees' reply was due.  The Board considered the interests of justice, and found that the appellees would be prejudiced by this late disclosure.  A46.  Accordingly, the Board did not abuse its discretion in excluding the evidence.

Even if the Board had somehow abused its discretion in refusing to allow HPL's untimely submission, the error would have been harmless.  *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error").  Patent Office regulations state unequivocally that late-submitted evidence may be admitted only if the evidence "reasonably could not have been obtained earlier."  37 C.F.R. § 42.123(b).  But HPL could not possibly have made such a showing given Mr. Helferich's testimony that he turned over his documents to counsel for HPL "five, six years ago."  A2769-70 (233:18-234:10); *see also* A3216.  Indeed, HPL has not shown—or even alleged—that it did not have access to the contested evidence prior to the June 7, 2013 deadline.  There is no basis for overturning the Board's decision.

### B.    The Board's Conclusion That HPL Failed To Establish Conception Before The Critical Date Is Supported By Substantial Evidence

The '241 patent claims priority to an application filed on September 19, 1997.  Smith was filed nearly five months earlier on April 23, 1997.  HPL attempted to antedate Smith using a declaration from named inventor Richard

Helferich. But the only corroborating evidence of conception that Mr. Helferich could identify was an undated, unsigned handwritten specification. The Board found that this undated specification, by itself, was insufficient to corroborate Mr. Helferich's claimed conception date. A136–37. The Board also reviewed the other documents that were submitted to corroborate Mr. Helferich's testimony, and found them too vague and general to corroborate his date of conception. A137-40.

Contrary to HPL's suggestion, the Board did not adopt a "categorical rule that prohibits consideration of corroborating documents simply because the inventor testifies to their date." Br. at 58. Rather, the Board correctly held that inventors may not "seek to corroborate their testimony with a document and, at the same time, attempt to corroborate the date of the document with their testimony," (A137) citing this Court's reasoning in *In re NTP, Inc.*, 654 F.3d 1279, 1291-92 (Fed. Cir. 2011). HPL attempts to distinguish that reasoning because in *NTP* the earlier-dated Telefind document was not in evidence, while here the undated, handwritten specification is in evidence. Br. at 58-59. But that distinction misses the point. In *NTP,* the inventors sought to corroborate their testimony on conception with the Telefind document in evidence, but, at the same time, to corroborate the date of that document with their testimony. *NTP*, 654 F.3d at 1291-92. The same is true here - HPL seeks to corroborate Mr. Helferich's

testimony with the undated, handwritten specification, and to corroborate the date of that document with his testimony.

Contrary to HPL's brief, the Board did not "disregard additional evidence" that HPL offered in an effort to corroborate Mr. Helferich's testimony concerning the date of the handwritten specification.  Rather, the Board evaluated all of the evidence, and found that it was too vague and general to corroborate a date for the undated handwritten specification that Mr. Helferich relied on to show conception. A137–40.  HPL has failed to show that this determination was not supported by substantial evidence.

## CONCLUSION

For the reasons above, the Court should affirm the PTO's final written decision canceling the challenged claims of the '241 patent.

Respectfully submitted,


 /s/ Andrea G. Reister
ANDREA G. REISTER
GREGORY S. DISCHER
MICHAEL S. SAWYER
COVINGTON & BURLING LLP
1201 PENNSYLVANIA AVENUE, NW
WASHINGTON, DC 20004
(202) 662-6000

*Counsel for Appellees*

**Form 30**

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:     Nov. 17, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
   (by email or CM/ECF)

| Andrea G. Reister | /s/ Andrea G. Reister |
|---|---|
| Name of Counsel | Signature of Counsel |

Law Firm     Covington & Burling LLP

Address     1201 Pennsylvania Avenue, NW

City, State, ZIP     Washington, DC  20004

Telephone Number     202-662-6000

FAX Number     202-662-6291

E-mail Address     areister@cov.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations. Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b), this brief contains 13,408 words.  This certificate was prepared in reliance on the word count of the word-processing system (Word 2010) used to prepare this brief.

The undersigned further certifies that this brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Word 2010 in 14 point Times New Roman font.

November 17, 2014                          /s/ Andrea G. Reister
                                           Andrea G. Reister
                                           *Counsel for Appellees*